GEORGE MANGOLD ET AL., APPELLEES, v. AMERICAN INSURANCE COMPANY ET AL., APPELLEES; HOME INSURANCE COMPANY ET AL., APPELLANTS.

FILED APRIL 15, 1916. No. 18841.

Insurance: CONTRACT: CONSTRUCTION. In an action on a fire insurance policy, to which an "average clause" is attached, covering a lumber yard and its contents wherein there are a number of buildings and piles of stock, all within a common inclosure, and also covering the same class of property on a lot lying across a street and disconnected from the main yard, where no separate designation of the buildings or piles of stock in the main yard is made in the policy, the main yard with the property therein will be regarded

as one of the "premises" named in the "average clause," and the property disconnected therefrom will be regarded as a separate "premises" within the terms of the contract.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Stout, Rose & Wells* and *William C. Ramsey,* for appellants.

*Flansburg & Flansburg, John D. Wear* and *J. J. O'Connor, contra.*

MORRISSEY, C. J.

Plaintiffs were engaged in the lumber business at Bennington, Nebraska. Their main yard and sheds were located on lots 6, 7, 8 and 9 of the railroad right of way, while across Stark street, 80 feet to the east, lay lot 18, block 10, which was used in connection with the yard as a place for piling stock and material.

March 1, 1911, plaintiffs took a policy of insurance for $3,000 in the Nebraska Lumbermen's Mutual Insurance Association; hereinafter called the "Nebraska company," covering their stock of lumber and building materials, and "their sheds, office, and warehouse buildings, and office furniture and fixtures." April 25, 1912, they took additional insurance in the sum of $3,000 in the Retail Lumbermen's Insurance Association of Minnesota, hereinafter called the "Retail company," covering the same property. September 15, 1912, they took a policy for $3,000 in the American Insurance Company of New Jersey, hereinafter called the "American company," on the same property, and on January 6, 1913, they took a policy for $5,000 in the Home Insurance Company of New York, hereinafter called the "Home company," covering the same property.

January 7, 1913, while each of said policies was in force, a fire occurred. The office building and some other property were destroyed, but none of the loss occurred on lot 18, block 10. Plaintiffs notified the insurance companies

99 Neb. 42

and asked for an adjustment. The American company and the Home company sent a Mr. Garmire to represent them. The Retail company sent a Mr. Holmes. Mr. Garmire asked for authority to represent the Nebraska company. Peter Mangold, father of the plaintiffs, was a director in the Nebraska company and lived at Bennington. The record seems to show that he was requested to act for his company, and it is the contention of the appellants that he did so; but he testifies that he did not so act, and the Nebraska company denies that it was represented in the making of the adjustment that followed.

The adjusters and the insured agreed that the total loss was $4,807.51, which they undertook to apportion and charge against the respective companies as follows: Nebraska company, $1,601.83; American company, $1,601.83; Retail company, $601.44; and the Home company, $1,002.41. Proofs of loss were prepared and signed on behalf of the Mangolds, directed to the respective companies for the amounts stated. The Retail and the Home companies immediately sent drafts for the amounts charged to them, but the American and Nebraska companies, not being satisfied with the apportionment of loss, refused to pay the amounts assessed against them. Without cashing the drafts which they had received, plaintiffs instituted this suit on the four policies, and returned the drafts.

The amount of loss is admitted by all of the companies, but they differ as to the amount that ought to be paid by each. The cause was tried to the court without a jury. Judgment was entered against the American company for $1,051.24; the Nebraska company for $1,051.24; the Retail company for $1,014.39, and the Home company for $1,690.64. It may be said that this judgment sustains the theory of the American company and the Nebraska company. The Retail company and the Home company have appealed.

An average clause was attached to the Home policy, stating: "It is understood and agreed that the amount

insured by this policy shall attach in each of the above-named premises, in that proportion of the amount hereby insured that the value of property covered by this policy, contained in each of said places, shall bear to the value of such property contained in all of above-named premises." A reciprocal or favored policy clause was attached to the Retail policy, providing: "If any policy in any other company, covering the described property, shall contain any conditions of average or coinsurance, this policy shall be subject to the conditions of average or coinsurance in like manner."

Appellees contend that the main yard which constituted a single inclosure was one "premises" or risk and the property disconnected therefrom and lying across the street on lot 18, block 10, constituted another "premises" or risk. When the adjusters undertook their work they divided the property located on lots 6, 7, 8 and 9 into different "premises," and with this as a basis they reached the conclusions which have been heretofore set out. Appellees denied the correctness of this theory, and insist that this yard or inclosure cannot be arbitrarily divided after the loss has occurred. The court took the view contended for by appellees, and after a careful examination of the record we are constrained to believe that this yard or inclosure is not susceptible of the arbitrary division which the adjusters attempted to make. There are several buildings on the property. They are not placed with any regard for lot lines, nor separately named or described in the policy, but the whole scheme and arrangement indicates that the yard was intended to constitute a single "premises," and the lot across the street was intended to, and did, constitute a single or separate "premises." Taking this view of the record, the judgment entered by the court was the only one that could be entered under the admissions and the evidence, unless the other points raised by appellants are controlling.

It is claimed by appellants that appellees participated in the adjustment and are estopped from questioning the

correctness of the apportionment between the companies, but this claim is not sustained by the record. No one has changed his position because of the adjustment, and the doctrine of estoppel cannot be applied. It is true that plaintiffs signed up proofs of loss calling for the amount from each company which appellants say was the proper amount for each to pay, but it is very clear that in doing this they were simply making a formal statement at the request of the representatives of the companies. They agreed on the amount which they were to receive, and it mattered not to them how it was divided among the four companies carrying the insurance. They acted as other men similarly situated would act. They left the matter of division for the companies. They asked only for that which was coming to them, and signed the proofs of loss without question, but without intention of waiving their rights under the policies.

It is also contended that the American company and the Nebraska company were bound by the acts of the adjusters in fixing the amounts, but we think it may be seriously questioned whether the Nebraska company had a representative there. Even if Mr. Mangold was authorized to act for the company, he was without authority to increase its liability under the policy. The American company was represented by Mr. Garmire, but the terms of his employment did not authorize him to alter the liability of the company. So far as the adjustment went, it amounted to a mere settlement or determination of the amount of the loss, and neither increased or decreased the liability which any company owed under its policy.

The whole controversy appears to have arisen over the mistaken right of these adjusters to make an arbitrary division of the yard. We can find nothing in the record that warrants the making of such division as was attempted, and the judgment of the district court is

AFFIRMED.

ROSE and SEDGWICK, JJ., not sitting.